UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE

| | |
|---|---|
| JUDE LAPORTE, AND JOMAR LAPORTE<br><br>                   Plaintiffs<br><br>v.<br><br>CITY OF NASHVILLE, METROPOLITAN NASHVILLE POLICE DEPARTMENT, POLICE OFFICER KIMBERLIN R. ROTHWELL, UNIDENTIFIED POLICE OFFICERS RESPONDING TO THE AUTO PARTS STORE and TINA LOWE<br>                   Defendants | **COMPLAINT FOR VIOLATIONS OF 42 USC § 1983 AND THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**<br><br>**JURY DEMAND** |

NOW COME PLAINTIFFS, Jude Laporte and Jomar Laporte, hereinafter referred to as "Plaintiffs", through counsel of record, to file their cause of action against the City of Nashville, the Metro Police Department, Police Officer Kimberlin R. Rothwell, Unidentified Police Officers, and Tina Lowe, and in support of their cause of action, Plaintiffs state as follows, to wit:

### THE PARTIES

1. Plaintiffs Jude Laporte and Jomar Laporte are individuals residing in Davidson County, State of Tennessee.

2. DEFENDANT City of Nashville is a city incorporated under the laws of the State of Tennessee, which operates and employs all officers of the Metropolitan Nashville Police

Department.

3. DEFENDANT Metropolitan Nashville Police Department provides law enforcement services for Metropolitan Nashville and Davidson County, Tennessee.

4. DEFENDANT Officer Kimberlin R. Rothwell is a police officer with the Metropolitan Nashville Police Department named in her individual capacity, and for identification purposes of the police investigator who took out the warrants against both Jude and Jomar Laporte. Upon information and belief, this defendant resides within the State of Tennessee.

5. DEFENDANTS Unidentified Police Officers are unnamed police officers with the Metropolitan Nashville Police Department identified for the purposes of physically identifying those who held Jomar Laporte against his will in the auto parts store. Upon information and belief, these officers reside within the State of Tennessee.

6. Tina Lowe (hereinafter "Ms. Lowe" or "Defendant Lowe") is an individual who is believed to reside in Nashville, Davidson County, Tennessee at 205 Jenry Ct., and to be subject to the jurisdiction of this Court.

## JURISDICTION & VENUE

7. This Court has subject matter jurisdiction under 28 USC § 1331, on the basis of there being a federal question relating to the U.S. Constitution. See *Bivens v. Six Unknown Narcotics Agents,* 403 U.S. 388 (1971).

8. This Court also has subject matter jurisdiction under 28 USC § 1331, on the basis of there being a federal question relating to 42 USC § 1983.

9. Venue is appropriate because Defendant City of Nashville Tennessee, also known as Metropolitan Davidson County, is a city within the district boundaries for this Court, and because all of the remaining defendants, whose identities will be determined via discovery, are employed by the City of Nashville aka Metropolitan Nashville Davidson County. Therefore, there

is a high probability that all remaining defendants live in or near this Court's district.

**FACTS OF CASE**

10. Plaintiffs Jude Laporte and his brother, Jomar Laporte, who are African American males, were both taken into custody, arrested and detained by the Metropolitan Nashville Police Department, specifically, according to warrants taken out by Officer Kimberlin R. Rothwell, alleging that the brothers had engaged in Robbery, Acting in Concert with each other in violation of T.C.A. 39-13-401-1, constituting (B) felonies.

11. The alleged victim, Tina Lowe, had set up a scam to sell a falsely advertised cell phone on Craig's List. She had listed it as a new iPhone 6s, when, in fact, it was a refurbished iPhone 6.

12. Ms. Lowe met several African Americans, two males, one of whom was Plaintiff Jomar Laporte, and one young female, at a nearby McDonalds to conduct the transaction. This is a typical practice for people who buy and sell on Craig's list.

13. Ms. Lowe voluntarily got into the vehicle driven by the prospective buyers because it was cold, and negotiated the sale while her Husband, who had come with her, waited in their car.

14. When it was discovered that Ms. Lowe was perpetrating a fraud on the prospective buyers, they backed out of the deal, gave Ms. Lowe back her phone, took back their money and attempted to leave. The three prospective buyers were headed to a Church service to set up sound equipment.

15. Ms. Lowe had exited their vehicle voluntarily when the scam was discovered.

16. Ms. Lowe claimed that she had worked for the Metropolitan Nashville Police Department and indicated that she could cause them trouble for backing out of the deal.

17. Her husband, who had been waiting for Ms. Lowe in their car, exited that vehicle,

pulled a knife on the potential buyers, and threatened to cut them.

18. The prospective buyers began to video the events on a cell phone which clearly showed that the Husband of Ms. Lowe was holding the iPhone that the Lowes later reported had been stolen and thrown out of the window of the vehicle as the potential buyers drove away.

19. The events described above occurred on or about March 13th, 2017, at or around 1850 hours, at or around a McDonald's parking lot at 545 Donelson Pike in Nashville, Davidson County, Tennessee.

20. Ms. Lowe, who claimed to have connections to the Metropolitan Police Department, had a photo of the license plate number of the prospective buyers' vehicle, which she apparently took as it drove away, which was registered to Plaintiff Jude Laporte.

21. After the prospective buyers, who were all African Americans, left the area, Ms. Lowe called 911.

22. Officer Moore responded and brought the subjects to the police department to have the case further investigated by Detectives.

23. No crime scene photos were taken.

24. No patrol car video or audio have been located or turned over in response to a public records request.

25. No additional witnesses were identified in the police report.

26. Defendant Lowe identified Jude Laporte in a photo lineup at the Metropolitan Nashville Police Department. This identification was, surprisingly, neither audio or video recorded.

27. Defendant Lowe's Husband could not identify anyone from the same photo lineup. His inability to make identification was recorded.

28. Ms. Lowe and her Husband, who self-admittedly pulled a knife on a group of

unarmed African Americans and threatened to cut them, was not arrested, investigated or charged with any crime.

29. Plaintiff Jude Laporte, the African American Male who owned the vehicle that was driven by his brother and sister to buy a phone off of Craig's List was nowhere near the parking lot of McDonalds when the events occurred and knew nothing about the events that took place there until later. Several witnesses can attest to his whereabouts.

30. Plaintiff Jude Laporte was a licensed driver whose address was easily available to an investigating law enforcement officer.

31. Plaintiff Jomar Laporte, the younger brother, and the minor sister of the Laportes were the only ones in the vehicle when they went to buy the phone.

32. From the official police investigative file, Defendant Officer Rothwell made no attempt whatsoever to locate or interview either Plaintiff Jude Laporte or Plaintiff Jomar Laporte prior to taking out class (B) felony warrants against them for Robbery which carries a penalty of up to 12 years in jail for a first offense. She, in fact, then placed them on the "Most Wanted" alert list.

33. From the Metropolitan Nashville Police records, Defendant Officer Rothwell made no attempt to investigate either Ms. Lowe or her husband or to validate any of the information they gave her before taking out warrants, even though the white male identified as Ms. Lowe's Husband admittedly pulled a knife on the unarmed African Americans in the vehicle and threatened them.

34. Plaintiff Jude Laporte was a local minister at the time and very active in his community. He had no criminal history whatsoever.

35. Plaintiff Jude Laporte first found out that arrest warrants were taken out against him from a parishioner in his church who said that she had seen his name and picture on a Most

Wanted list in a local government-affiliated office.

36. Plaintiff Jude Laporte was in shock and disbelief. He first thought it was a bad joke. Nonetheless, he voluntarily drove to the local police department to clear up the situation.

37. When Plaintiff Jude Laporte told the officers who he was, he was put in handcuffs and taken to jail. Again, no investigator gave any validity to his acclamation of innocence.

38. Plaintiff Jomar Laporte was also put in handcuffs and incarcerated.

39. Both Plaintiffs were forced to endure the humiliation of being incarcerated and were not given due process because of the color of their skin.

40. Both Plaintiffs were forced to hire an attorney and appear in a criminal court even though they were innocent, with Plaintiff Jude Laporte not even having been at the scene of the incident.

41. The charges against both Plaintiffs were dismissed as there was no probable cause shown for their arrest. No witness appeared in court who could positively identify Plaintiff Jude Laporte. He and Jomar Laporte are vastly different in size and could not reasonably be mistaken for each other.

42. Plaintiff Jude Laporte and Plaintiff Jomar Laporte each filed complaints against the Police Officer who took out the warrants.

43. The Metropolitan Nashville Police Department almost immediately responded to both brothers that officer Rothwell had followed proper procedures in place for investigating officers in their department. They completely dismissed their claim in what could be described as an attitude of malicious insensitivity and disrespect.

44. After Plaintiffs Jude and Jomar Laporte were initially bonded out of jail, the Metropolitan Nashville Police Department failed to remove their information from the Most Wanted listings published throughout the jurisdiction.

45. After being placed on bond and awaiting his court date, Jomar Laporte was innocently shopping in an auto parts store when he was swarmed by lethally-armed police officers; approximately six police cruiser vehicles with lights flashing were sitting outside the store.

46. Jomar Laporte was in fear of his life and believes that the police department discriminated against him because of the color of his skin, resulting in the extreme over-reaction of local law enforcement, and in violation of his constitutional rights.

47. There was absolutely no probable cause for this incident.

48. Again, Plaintiff Jomar Laporte's complaint to the Metropolitan Police Department was dismissed without affording him due process and with no respect given for his civil rights.

49. Plaintiff Jomar Laporte was held against his will (falsely imprisoned) in the auto parts store due to the blatant militaristic and unjustified actions of law enforcement.

50. Although Plaintiff Jomar Laporte was eventually allowed to leave, he suffered public humiliation and degradation by the acts of law enforcement.

51. Since these events took place, Plaintiffs Jude Laporte and Jomar Laporte have both developed a fear of law enforcement and acute demoralization and emotional distress. It is unlikely that two young Caucasian mothers meeting at a McDonalds parking lot to buy or sell baby cloths or collectable toys would have endured this type of extreme and unconscionable treatment.

52. Both Jude and Jomar Laporte were denied due process and suffered discrimination in violation of their constitutional rights and in violation of 42 USC 1983.

53. Both have suffered pecuniary and emotional damage.

## JURY TRIAL

54. Plaintiffs Jude Laporte and Jomar Laporte demand a jury trial.

## CLAIMS FOR

## RELIEF

### Count I - Violations of 42 USC § 1983

55. The OFFICERS, particularly Defendant Officer Rothwell, and the practices and procedures of the Metropolitan Nashville Police Department, which approved her actions as proper procedure, are unconstitutionally, racially motivated in practice and deny African American suspects fair and equitable treatment. In this case, they violated the constitutional civil rights and due process rights of Plaintiffs Jude Laporte and Jomar Laporte based on no other logical reason except their race. Canceled Craig's List transactions with unarmed individuals being raised to the level of (B)

felonies is borderline ludicrous.

56. Defendant City of Nashville is responsible for the training of all Metropolitan Nashville Police Department officers and for ensuring that no procedures or practices are employed in such a way as to racially discriminate or violate any individual's civil or due process rights.

57. The fact that Defendant Officer Rothwell did not object to the unlawful arrest and detainment of Plaintiffs Jude and Jomar Laporte is *prima facia* evidence that this was not simply a case of an officer failing to use good judgment, but rather, an officer who was not properly trained as to the

requirements of their duties and ensuring that due care is exercised before jumping to the conclusion that an unsubstantiated account and identification of a black male as a suspect is not sufficient in and of itself to validate a warrant being taken out against him for a (B) Felony.

58. This charge is levied against the Metropolitan Nashville Police Department and the City of Nashville, which are liable for their failure to train their employees, and against each of the OFFICERS in their individual capacities.

### Count II – The Fourth Amendment to the United States Constitution

59. The OFFICERS approached Plaintiff Jomar Laporte in the auto parts store without any articulable reason permitted at the time that they approached Jomar Laporte and the time that he was detained.

60. Despite not having any articulable reason permitted by the U.S. Constitution and/or federal law to detain Plaintiff Jomar Laporte, the OFFICERS did so, anyway.

61. Defendant City of Nashville and the Metropolitan Nashville Police Department is responsible for the training of all Department officers and responsible to assure that most wanted notifications are updated in a timely fashion that does not violate due process or double jeopardy. Multiple armed officers approaching an individual who is doing nothing wrong and has no pending unserved warrants against him is intimidating and clearly violates his civil rights.

62. The fact that none of the OFFICERS objected to the furtherance of this detention is *prima facia* evidence that this was not simply a case of an officer failing to use good judgment, but rather numerous officers who were not properly trained as to the requirements of their duties and the significance of honoring the civil rights of minorities.

63. This charge is levied against the Metropolitan Nashville Police Department, which is liable for their failure to train their employees, and against each of the OFFICERS in their individual capacities.

64. The OFFICERS approached Jomar Laporte without any articulable reason permitted by the U.S. Constitution and/or federal law.

65. The OFFICERS gained no additional reasons to detain Jomar Laporte between the time that they approached him and the time that they let him go.

66. Absent from this encounter with armed officers on high alert, there was no reason to think that Plaintiff Jomar Laporte was armed, dangerous, or in any way about to cause any harm to anyone.

67. Defendant City of Nashville is responsible for the training of all Metropolitan Nashville Police Department officers.

68. Defendant City of Nashville is responsible for the accurate and timely updates to its Most Wanted lists.

### Count III – The Fourteenth Amendment to the United States Constitution

69. Plaintiffs Jude Laporte and Jomar Laporte were entitled to a fair and impartial investigation before being charged with (B) felonies. Their due process rights were violated as guaranteed by the Fourteenth Amendment to the US Constitution.

70. Depriving a citizen of a right (in this case, their freedom and reputation) are violations of those rights.

71. Defendant City of Nashville and the Metropolitan Nashville Police Department are responsible for the training of all Nashville Police Department officers.

72. The fact that none of the OFFICERS nor their supervisors objected to the false arrest based on the deprivation of the due process rights of both Plaintiffs Jude and Jomar LapPorte is *prima facia* evidence that this was not simply a case of an officer failing to use good judgment, but rather several officers who were not properly trained as to the requirements of their duties and the fair treatment of minorities.

73. The fact that the OFFICERS and the City seem quite unconcerned with the consequences of denying these men their freedom is *prima facia* evidence that this was not simply

a case of an officer failing to use good judgment, but rather several officers who were not properly trained as to the requirements of their duties.

74. This charge is levied against the Metropolitan Nashville Police Department and the City of Nashville who is liable for their failure to train their employees, and against each of the OFFICERS in their individual capacities.

75. Plaintiffs retain their right and give notice that they may seek leave to amend this complaint with additional claims based on Tennessee or Federal law at a later time. The city assigned this claim #IC2017-00137: MR2018-00012.

## **PRAYER FOR RELIEF**

WHEREFORE, PLAINTIFFS pray for the following relief:

a) Actual and punitive damages against the City of Nashville and (MNPD) totaling US $200,000.00 each.

b) Actual and punitive damages against Officer Rothwell and Tina Lowe of $5,000.00 from each Defendant to each Plaintiff.

c) Cost of the action.

d) Reasonable attorney's fees.

e) Any other such relief as the court deems appropriate.

Dated: March 13, 2018

Respectfully submitted,

\_\_/s/ Laural Hemenway_____
**LAURAL HEMENWAY** (BPR #19524)
2301 21st Ave. S. Ste. 300
Nashville, Tennessee 37212
Phone (615) 848-8482
Email: Laural@hemenway-law.com
*Attorney for Plaintiffs*

## OATH

STATE OF TENNESSEE
COUNTY OF DAVIDSON

    I, JUDE LAPORTE after first being duly sworn according to law, make oath that I have read the foregoing and that the facts set forth therein are true to the best of my knowledge, information, and belief. I further affirm that I am entering into this agreement freely and voluntarily after having been informed of my rights.

    Witness my hand this 13th day of March, 2018.

_____
JUDE LAPORTE

Sworn to and subscribe before me, this 13th day of March, 2018.

_____
NOTARY PUBLIC
My Commission Expires 9-7-2020

## OATH

STATE OF TENNESSEE

COUNTY OF DAVIDSON

    I, JOMAR LAPORTE after first being duly sworn according to law, make oath that I have read the foregoing and that the facts set forth therein are true to the best of my knowledge, information, and belief. I further affirm that I am entering into this agreement freely and voluntarily after having been informed of my rights.

    Witness my hand this 13th day of March, 2018.

_____
JOMAR LAPORTE

Sworn to and subscribe before me, this 13th day of March, 2018.

_____
NOTARY PUBLIC
My Commission Expires 9-7-2020