IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

JUDE LAPORTE and JOMAR LAPORTE,    )
                                )
       Plaintiffs,             )
                                )     NO. 3:18-cv-00282
v.                           )     JUDGE RICHARDSON
                                )
CITY OF NASHVILLE, et al.,       )
                                )
       Defendant.            )

## MEMORANDUM OPINION

Before the Court is Defendant Police Officer Kimberlin Rothwell's Motion to Dismiss (Doc. No. 7) and Defendant Metropolitan Government of Nashville and Davidson County's ("Metro") Motion to Dismiss (Doc. No. 9). Plaintiffs responded in opposition to both motions (Doc. Nos. 23, 25), and Defendants replied (Doc. Nos. 27, 28). For the reasons discussed below, Rothwell's motion is granted, and Metro's motion is granted in part and deferred in part, and Plaintiff is ordered to show cause within ten days why the remaining claims (i.e., Count II against Metro, and all counts against Defendant Tina Lowe and the "unidentified police officers") should not be dismissed.[1]

## FACTUAL BACKGROUND[2]

This case arises out of a March 2017 interaction at a McDonald's parking lot on Donaldson Pike in Nashville, Tennessee between Defendant Tina Lowe and "several African Americans." (Doc. No. 1 ("Compl.") ¶¶ 12, 19.) Lowe, who ultimately was alleged by MNPD to be a crime

---

[1] Unlike Counts I and III, Count II as to Defendant Metro remains in the case because, as discussed herein, Defendant Metro did not specifically address one theory of liability within that claim.

[2] For purposes of the motions to dismiss, the Court will assume the following alleged facts to be true.

victim as a result of this interaction, set up a scam to sell a falsely advertised cell phone on Craig's list, posting for sale a new iPhone 6S, when in fact the phone was a refurbished iPhone 6. (*Id.* ¶ 11.) Defendant Lowe met two African American males, including Plaintiff Jomar Laporte, and one African American female at the above described location to conduct the transaction. (*Id.* ¶ 12.) Defendant Lowe voluntarily entered the prospective buyers' vehicle to negotiate the sale while her husband, who had come with her, waited in their car. (*Id.* ¶ 13.) When the buyers discovered that Defendant Lowe was perpetrating a fraud, the buyers backed out of the deal, gave Defendant Lowe her phone, took back their money, and tried to leave. (*Id.* ¶ 14.) Defendant Lowe then exited the prospective buyers' vehicle. (*Id.* ¶ 15.) Defendant Lowe falsely claimed to work for the Metropolitan Nashville Police Department ("MNPD") and indicated that she could cause them trouble for backing out of the deal. (*Id.* ¶ 16.)

Defendant Lowe's husband, who had been waiting for Defendant Lowe in their car, exited their vehicle and pulled a knife on the potential buyers, threatening to cut them. (*Id.* ¶ 17.) The prospective buyers began to video the events on a cell phone. (*Id.* ¶ 18.) The video showed that Defendant Lowe's husband was holding the iPhone that the Lowes later reported had been stolen and thrown out the window of the prospective buyers' vehicle as they drove away. (*Id.*)

Defendant Lowe took a picture of the prospective buyers' license plate number and called 911. (*Id.* ¶¶ 20-31.) Officer Moore responded and brought Defendant Lowe and her husband to the police department to have detectives further investigate the case. (*Id.* ¶ 22.) No crime scene photos were taken, no patrol car video or audio were located or turned over in response to a public records request, and no additional witnesses were identified in the police report. (*Id.* ¶¶ 23-25.) Defendant Lowe identified Jude Laporte in a photo lineup at the MNPD. (*Id.* ¶ 26.) This identification was neither audio nor video recorded. (*Id.*) Defendant Lowe's husband could not identify anyone from

the same photo lineup. (*Id.* ¶ 27.) His inability to make an identification was recorded. (*Id.*) Defendant Lowe and her husband, who self-admittedly pulled a knife on a group of African Americans and threatened to cut them, was not arrested, investigated, or charged with any crime. (*Id.* ¶ 28.)

Defendant Rothwell made no attempt to locate or interview Plaintiffs prior to taking out class (B) felony warrants against them for robbery and placing them on the "most wanted" alert list. (*Id.* ¶ 32.) Defendant Rothwell also made no attempt to investigate either Defendant Lowe or her husband to validate any information they gave her before taking out warrants. (*Id.* ¶ 33.)

Plaintiff Jude Laporte, who owned the vehicle that was driven by his brother (Jomar) and sister to buy the phone, was nowhere near the McDonald's parking lot when the events occurred and did not learn about these events until later. (*Id.* ¶ 29.) He first found out about the arrest warrants from a parishioner in his church who had seen his name and picture on a most wanted list in a local government-affiliated office. (*Id.* ¶ 35.) Plaintiff Jude Laporte thought the situation was a bad joke and drove to the local police department to clear it up. (*Id.* ¶ 36.) When he told the police officers who he was, he was put in handcuffs and taken to jail. (*Id.* ¶ 37.) Plaintiff Jomar Laporte was also handcuffed and then incarcerated. (*Id.* ¶ 38.)[3]

The charges against Plaintiffs were dismissed because there was no probable cause shown for their arrest. (*Id.* ¶ 41.) Plaintiffs each filed complaints against Defendant Rothwell. (*Id.* ¶ 42.) The MNPD immediately responded that Defendant Rothwell had followed proper procedures and dismissed their complaints. (*Id.* ¶ 43.)

After Plaintiffs were initially bonded out of jail, the MNPD failed to remove them from the most wanted listings. (*Id.* ¶ 44.) As a result, Plaintiff Jomar Laporte was shopping in an auto-parts

---

[3] It is unclear from the complaint when or where Plaintiff Jomar Laporte was arrested.

store when he was swarmed by armed police officers and falsely imprisoned in the store. (*Id.* ¶¶ 45, 49.) There was no probable cause for this incident. (*Id.* ¶ 46.) Plaintiff Jomar Laporte filed another complaint to the MNPD about this incident, which was dismissed. (*Id.* ¶ 48.) Since these events took place, Plaintiffs developed a fear of law enforcement and acute emotional distress. (*Id.* ¶ 51.)

Based on these allegations, the complaint sets forth three Section 1983 claims.[4] Count I fails to identify a specific constitutional amendment under which Plaintiffs bring their Section 1983 claim but appears to allege a Section 1983 claim based on a violation of equal protection.[5] (*Id.* ¶¶ 55-58.) Count I is brought against Defendant Rothwell and unidentified police officers in their individual capacities and the MNPD and Metro for their failure to train their employees.[6] (*Id.* ¶ 58.) Count II appears to allege Section 1983 claims based on unreasonable seizure in violation of the Fourth Amendment for detaining Plaintiff Jomar Laporte in the auto-parts store. (*Id.* ¶¶ 59-68.) Count II is brought against Defendant Rothwell and unidentified police officers in their individual capacities, MNPD and Metro for their failure to train their employees, and Metro for failing to timely update its most wanted list. (*Id.* ¶¶ 63, 67-68.) Count III appears to allege Section 1983 claims based on Fourteenth Amendment due process rights for failing to properly investigate Plaintiffs before charging them with (B) felonies and for falsely arresting them. (*Id.* ¶¶ 69-75.) Count III is brought against Defendant Rothwell and the unidentified police officers in their individual capacities and MNPD and Metro for their failure to train their employees. (*Id.* ¶ 74.)

---

[4] The Court notes that the counts in the complaint are not alleged with ideal clarity.

[5] Although Plaintiffs refer to "due process" in Count I, the parties construe Count I as alleging an equal protection claim under the Fourteenth Amendment in their briefs.

[6] The unidentified police officers are unnamed MNPD police officers involved with holding Plaintiff Jomar Laporte against his will in the auto-parts store. (Compl. ¶ 5.)

On May 25, 2018, MNPD was dismissed from the case pursuant to a stipulation between the parties who agreed that MNPD is not an entity capable of being sued separate from Metro. (*See* Doc. No. 21.) Defendants Rothwell and Metro now move to dismiss all claims against them. (Doc. Nos. 7, 9.)

## LEGAL STANDARD

For purposes of a motion to dismiss, the Court must take the factual allegations in the complaint as true, as the Court has done above. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Id*. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id*. at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id*. at 678; *Fritz v. Charter Township of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010). Moreover, factual allegations that are merely consistent with the defendant's liability do not satisfy the claimant's burden, as mere consistency does not establish plausibility of entitlement to relief even if it supports the possibility of relief. *Iqbal*, 556 U.S. at 678.

In determining whether a complaint is sufficient under the standards of *Iqbal* and its predecessor and complementary case, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), it may be appropriate to "begin [the] analysis by identifying the allegations in the complaint that are not

entitled to the assumption of truth." *Iqbal*, 556 U.S. at 680. Identifying and setting aside such allegations is crucial because they simply do not count toward the plaintiff's goal of showing plausibility of entitlement to relief. As suggested above, such allegations include "bare assertions," formulaic recitation of the elements, and "conclusory" or "bald" allegations. *Id*. at 681. The question is whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id*. If not, the pleading fails to meet the standard of Rule 8 and thus must be dismissed pursuant to Rule 12(b)(6). *Id*. at 683.

## DISCUSSION

### I.      Additional Allegations in Plaintiffs' Responses

Plaintiffs, throughout their response briefs, make allegations that are not in the complaint. The Court will not consider these additional allegations in deciding the instant motion to dismiss. *See El-Hallani v. Huntington Nat. Bank*, No. 13-CV-12983, 2014 WL 2217237, at *6 (E.D. Mich. May 29, 2014), *rev'd on other grounds*, 623 F. App'x 730 (6th Cir. 2015) (stating that the court cannot consider new facts discussed in plaintiffs' response brief for purposes of defendant's motion to dismiss); *see also Strayhorn v. Wyeth Pharm., Inc.*, 737 F.3d 378, 399 (6th Cir. 2013) ("[T]he appropriate method for adding new factual allegations to a complaint is not via a [ ] . . . brief, but by filing an amended complaint."). Accordingly, the Court's analysis below considers whether the allegations in the complaint, and not the allegations in Plaintiffs' response, plausibly give rise to an entitlement to relief.

### II.      Defendant Rothwell's Motion to Dismiss

Defendant Rothwell moves to dismiss all claims against her. The Court discusses each Count in turn.

**A. Count I**

As previously discussed, Count I is not alleged with ideal clarity because, *inter alia*, it does not specify a specific constitutional amendment that Defendants violated. Although Count I mentions "due process rights" and does not mention the phrase "equal protection," the parties construe Count I as alleging an equal protection claim under Section 1983 in their briefs given that Count I discusses racial discrimination and practices that deny African American suspects fair and equitable treatment.[7] Accordingly, the Court also construes Count I as alleging an equal protection claim under Section 1983.

The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o state shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. To state an equal protection claim under Section 1983, a plaintiff must allege that a state actor intentionally discriminated against him because of his membership in a protected class. *McCleskey v. Kemp*, 481 U.S. 279, 292 (1987); *Herron v. Harrison*, 203 F.3d 410, 417 (6th Cir. 2000). The plaintiff must also demonstrate that he was similarly situated to persons outside the class who were treated differently under the facts alleged. *See Aureus Holdings, Ltd. v. Detroit City*, 303 F. App'x 265, 269 (6th Cir. 2008). Similarly situated means that "a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. Of Armada, Mich.*, 801 F.3d 630, 650 (6th Cir. 2011) (quoting *U.S. v. Green*, 654 F.3d, 637, 650 (6th Cir. 2011)). When evaluating whether parties are similarly situated, "courts should not demand exact correlation, but should instead seek

---

[7] As Plaintiffs state in their response brief, "Count I of the Complaint sets forth clear allegations that the Plaintiffs were discriminated against because they are African American and thus their Equal Protection rights were violated." (Doc. No. 26 at 6.)

relevant similarity." *EJS Properties, LLC v. City of Toledo*, 698 F.3d 845, 864-65 (6th Cir. 2012) (quoting *Perry v. McGinnis*, 209 F.3d 597, 601 (6th Cir. 2000)).[8]

Defendant Rothwell argues that the equal protection claim against her should be dismissed because Plaintiffs fail to adequately allege that racial animus motivated Defendant Rothwell's actions. The Court agrees. The complaint provides the conclusory allegation that Defendants violated Plaintiffs' constitutional rights "based on no other logical reason except their race." (Compl. ¶ 55.) Without more, this conclusory allegation is insufficient. *See Iqbal*, 556 U.S. at 678.

Plaintiffs argue that "Count I of the Complaint sets forth clear allegations that the Plaintiffs were discriminated against because they are African Americans and thus their Equal Protection rights were violated." (Doc. No. 26 at 6.) However, the mere fact that Plaintiffs are African American is insufficient to support an inference that Defendant Rothwell took the alleged actions against them because of their race. *See Rondigo, L.L.C. v. Twp. of Richmond*, 641 F.3d 673, 682 (6th Cir. 2011) ("Plaintiffs' mere allegations that Dolores Michaels is a woman and Rondigo is a woman-owned business do not make out a claim for gender-based discrimination targeting them as members of a suspect class."); *Peterson v. Cty. of Monroe*, No. 14-CV-12853, 2015 WL 1439882, at *8 (E.D. Mich. Mar. 27, 2015), *aff'd*, No. 15-1615 (6th Cir. May 4, 2016) (holding that merely mentioning discrimination while identifying oneself as Native American does not state an equal protection claim). Plaintiffs also argue that "[i]t would be nearly impossible to imagine that [Defendant] Rothwell would have proceeded to take out (B) Felony warrants if the tags on the

---

[8] In Defendant Rothwell's reply, she discusses Plaintiffs' equal protection claim under a theory of selective enforcement. The Court declines to analyze Plaintiffs' equal protection claim under this theory because, *inter alia*, it is not mentioned in the complaint, and Defendant Rothwell raises this argument for the first time in her reply brief. *See Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held . . . that arguments made to us for the first time in a reply brief are waived.").

vehicle had led to the identification of a Judge, or a stereotypical soccer mom." (Doc. No. 26 at 6.) Plaintiffs might sincerely feel this way. However, this argument amounts to Plaintiffs' mere speculation and, at best, Plaintiff's conclusory opinion and does not equate to a well-pleaded factual allegation that would give rise to a cognizable Section 1983 equal protection claim.[9] Accordingly, the Court finds that Plaintiffs have failed to adequately allege a Section 1983 equal protection claim against Defendant Rothwell, and that claim against her will be dismissed with prejudice.[10]

**B. Count II**

As previously discussed, Count II alleges a Fourth Amendment violation stemming from the incident in which numerous unidentified officers detained Plaintiff Jomar Laporte in an auto-parts store after he was released on bond. Defendant Rothwell moves to dismiss Count II, to the extent it can be construed as being alleged against her, because the complaint does not allege that she was personally involved in that incident. To a state a cognizable Section 1983 claim, the plaintiff must allege that a named defendant had some personal involvement in the alleged violation. *See Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995) ("In order to prevail on his [Section 1983] claim, Copeland must establish that Stephens is culpable because he was personally involved in taking money out of Copeland's account . . . or that he otherwise encouraged or condoned others in doing so." (internal citation omitted)); *Johnson v. Daniels*, 769 F. Supp. 230, 234 (E.D. Mich. 1991), *aff'd*, 70 F.3d 1272 (6th Cir. 1995) ("Personal participation is a sine qua

---

[9] In Plaintiffs' response in opposition, Plaintiffs state that Defendant Rothwell has a history of being subject to internal investigations for racial profiling. However, because these facts are not in the complaint, the court cannot consider them when deciding the instant motion to dismiss.

[10] Because the Court grants Defendant Rothwell's motion on the aforementioned basis, it declines to specifically address her additional arguments, including qualified immunity.

non of individual capacity § 1983 suits."). The complaint does not allege that Defendant Rothwell was involved in Plaintiff Jomar Laporte's seizure at the auto-parts store. She is not alleged to have been present or to have somehow directed the seizure to occur. Although Plaintiffs allege that Defendant Rothwell placed them on the most wanted list, this alleged action on her part is not sufficiently related to the seizure to constitute personal involvement. In addition, Plaintiffs do not allege that it was Defendant Rothwell's responsibility to remove them from the list when the warrant was no longer outstanding. Therefore, Plaintiffs have failed to adequately allege a Section 1983 Fourth Amendment claim against Defendant Rothwell, and the Court will dismiss that claim against her with prejudice.

## C. Count III

In Count III, Plaintiffs claim that their due process rights were violated because they "were entitled to a fair and impartial investigation before being charge[d] with (B) felonies." (Compl. ¶ 69.) However, Plaintiffs, in their complaint or otherwise, do not detail whether their claim is brought under a theory of procedural or substantive due process. "Procedural due process ensures that citizens have procedural safeguards prior to the deprivation of rights; substantive due process limits the impingement of certain fundamental rights regardless of process." *Barefield v. Hillman*, No. 3:17-CV-01525, 2018 WL 6435732, at *2 (M.D. Tenn. Dec. 6, 2018) (Richardson, J.) (citing *Thomas v. Cohen*, 304 F. 3d 563, 578 (6th Cir. 2002)). Defendant Rothwell interprets Count III as stating a substantive due process claim rather than a procedural due process claim because Plaintiffs appear to allege a denial of a liberty interest, in this case "freedom and reputation," (Compl. ¶ 70), which sounds in substantive due process. In response, Plaintiffs do not dispute this characterization of the claim in Count III, and in fact indicate in multiple places that their complaint is about a denial of substantive rights rather than the absence of an adequate criminal investigation.

(Doc. No. 26 at 9, 11.)[11] Therefore, the Court accepts Defendant Rothwell's interpretation of Count III and construes Count III as alleging a substantive due process violation under the Fourteenth Amendment.[12]

Defendant Rothwell moves to dismiss Count III against her based on qualified immunity. "Although a motion pursuant to Rule 12(b)(6) invites an inquiry into the legal sufficiency of the complaint, not an analysis of potential defenses to the claims set forth therein, dismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir. 2016). To survive the motion to dismiss on qualified immunity grounds, the plaintiff must allege facts that "plausibly mak[e] out a claim that the defendant's conduct violated a constitutional right that was clearly established law at the time, such that a reasonable officer would have known that his conduct violated that right." *Johnson v. Moseley*, 790 F.3d 649, 653 (6th Cir. 2015). The plaintiff also must allege with particularity "facts that demonstrate what each defendant did to violate the asserted constitutional right." *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) (internal citations, quotation marks, and emphasis omitted). "The test is whether, reading the

---

[11] Plaintiffs in fact concede that the Sixth Circuit has not specifically recognized a Fourteenth Amendment right not to be subjected to "an inadequate criminal investigation" or the right to "an adequate and proper police investigation." (Doc. No. 26 at 9, 11).

[12] The substantive due process doctrine establishes that "'governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). This doctrine protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience. *Id.* It also protects the right to be free from arbitrary and capricious governmental actions, which is another formulation of the right to be free from conscience-shocking actions. *Id.* "Substantive-due-process claims are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" *Doe v. Miami Univ.*, 882 F.3d 579, 597 (6th Cir. 2018) (quoting *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1228 (6th Cir. 1997)).

complaint in the light most favorable to the plaintiff, it is plausible that an official's acts violated the plaintiff's clearly established constitutional right." *Heyne*, 655 F.3d at 562-63.

In analyzing the issue of qualified immunity, the "first step is to determine if the facts alleged make out a violation of a constitutional right. The second is to ask if the right at issue was 'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Martin*, 712 F.3d at 957 (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Although these two steps may be addressed in any order, both steps must be answered in the affirmative for the plaintiff's claim to proceed. *Id.* (citing *Pearson*, 555 U.S. at 236). If either step is not satisfied, then qualified immunity shields the government officer from civil damages. *Id.*

The Court addresses the second step first. Defendant Rothwell argues that because the Sixth Circuit has never recognized a due process right to an adequate and proper police investigation (prior to being charged with a felony), it could not have been clearly established that Defendant Rothwell's actions violated Plaintiffs' due process rights. As noted above, Plaintiffs concede that there is no recognized right to such an investigation, and argue instead that Plaintiffs were denied other, substantive due process rights such as the right to "be free from police overreaching, abuse of discretion, arrest or imprisonment without due process" and the right "not to be subjected to excessive force [or unlawful imprisonment] by police officers. (Doc. No. 26 at 9, 11.) Unfortunately for Plaintiffs, Count III alleges, at most, only deprivation of the right to "freedom" (including the right not to be falsely arrested) and "reputation." Plaintiffs do not provide any authority to support a position that Defendant Rothwell's conduct violated a clearly established constitutional right sounding in "freedom" or "reputation" (or anything else, for that matter). Most

critically, no facts alleged in the complaint support such a position. Accordingly, Defendant Rothwell is entitled to qualified immunity, and Count III will be dismissed with prejudice.

In sum, the Court will dismiss all claims alleged in this action as to Defendant Rothwell with prejudice.

## III.    Defendant Metro's Motion to Dismiss

Defendant Metro moves to dismiss all claims against it because Plaintiffs have failed to plausibly allege municipal liability under Section 1983. A municipality can be liable under Section 1983 only if the plaintiff establishes that: "(1) the plaintiff's harm was caused by a constitutional violation; and (2) the [municipality] was responsible for that violation." *Spears v. Ruth*, 589 F.3d 249, 256 (6th Cir. 2009). Municipalities cannot be held liable under Section 1983 on a respondeat superior theory. *Monnell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Instead, "municipalities are liable for harms resulting from a constitutional violation *only* when the injury resulted from an 'implementation of [the municipality's] official policies or established customs.'" *Spears*, 589 F.3d at 256 (quoting *Monnell*, 436 U.S. at 708 (Powell, J., concurring)) (emphasis in original).

Plaintiffs' primary theory of municipal liability in this case is failure to train.[13] "'A systematic failure to train police officers adequately is a custom or policy which can lead to municipal liability.'" *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012) (quoting *Miller v. Sanilac Cnty.*, 606 F.3d 240, 255 (6th Cir. 2010)). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Connick v. Thompson*, 563 U.S. 51

---

[13] Defendant Metro interprets the complaint as also alleging a failure-to-investigate claim against it because the complaint alleges that Defendant Metro did not sustain Plaintiffs' complaints to the MNPD related to the incidents that form the basis of this lawsuit. The Court, however, does not interpret the complaint as alleging a failure-to-investigate claim and therefore will not address it in detail below. To the extent that the complaint can possibly be interpreted as alleging such a claim, it will be dismissed for the reasons discussed in Defendant Metro's brief.

(2011) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985)). Under a failure to train theory of municipal liability, a plaintiff must show that (1) a training program is inadequate to the tasks that the officers must perform; (2) the inadequacy is the result of the defendant's deliberate indifference; and (3) the inadequacy is closely related to or actually caused the plaintiff's injury. *Plinton v. County of Summit*, 540 F.3d 459, 464 (6th Cir. 2008) (citing *City of Canton*, 489 U.S. at 389-91) (internal quotation marks omitted).

Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 410 (1997). In the context of a failure-to-train claim, deliberate indifference can be demonstrated in two ways: "through evidence of prior instances of unconstitutional conduct demonstrating that the [municipality] had notice that the training was deficient and likely to cause injury but ignored it," or "through evidence of a single violation of federal rights, accompanied by a showing that the [municipality] had failed to train its employees to handle recurring situations presenting an obvious potential for such a violation." *Harvey v. Campbell County, Tenn.*, 453 F. App'x 557, 562-63 (6th Cir. 2011) (internal citations omitted). Deliberate indifference based on a single violation of rights requires "a complete failure to train the police force, training that is so reckless or grossly negligent that future police misconduct is almost inevitable or would properly be characterized as substantially certain to result." *Id.* at 567 (citing *Hays v. Jefferson Cnty.*, 668 F.2d 869, 874 (6th Cir. 1982)).

With this framework in mind, the Court analyzes whether Plaintiffs have plausibly alleged that Defendant Metro is liable for the three Section 1983 violations.

### A. Count I

Count I alleges that Defendant Metro is liable for the violation of Plaintiffs' equal protection rights based on a failure to train theory. Specifically, Plaintiffs allege the following:

> Defendant [Metro] is responsible for the training of all Metropolitan Nashville Police Department officers and for ensuring that no procedures or practices are employed in such a way as to racially discriminate or violate any individual's civil or due process rights.
>
> The fact that Defendant Officer Rothwell did not object to the unlawful arrest and detainment of Plaintiffs . . . is *prima facie* evidence that this was not simply a case of an officer failing to use good judgment, but rather, an officer who was not properly trained as to the requirements of their duties and ensuring that due care is exercised before jumping to the conclusion that an unsubstantiated account and identification of a black male as a suspect is not sufficient in and of itself to validate a warrant being taken out against him for a (B) felony.

(Compl. ¶¶ 56-57.)

Defendant Metro argues that Count I should be dismissed because these allegations are conclusory and therefore insufficient to survive a motion to dismiss. The Court agrees. For example, nowhere in the complaint do Plaintiffs discuss Defendant Metro's training program or explain how the training program's inadequacies are a result of Defendant Metro's deliberate indifference to the constitutional rights of citizens. In addition, Plaintiffs' claim here is based on a single incident, and Plaintiff fails to adequately allege the above-identified facts necessary to show deliberate indifference based on a single incident. Plaintiffs' claims, therefore, do not plausibly allege municipal liability based on equal protection violations. The Court will grant Defendant Metro's motion to dismiss as to Count I and will dismiss that claim with prejudice.

## B. Count II

Count II appears to allege, albeit not with ideal clarity, that Defendant Metro is liable for violating Plaintiffs' Fourth Amendment rights based on the following two theories: (1) failure to train; and (2) failure to make accurate and timely updates to its "Most Wanted" lists.

In relation to the first theory, Plaintiffs allege the following:

> Multiple armed officers approaching an individual who is doing nothing wrong . . . clearly violates his constitutional rights. The fact that none of the OFFICERS objected to the furtherance of this detention is *prima facie* evidence that this was not a case of an officer failing to use good judgment, but rather numerous officers who were not properly trained as to the requirements of their duties and the significance of honoring the civil rights of minorities.

(Compl. ¶¶ 61-62.) Defendant Metro again moves for dismissal based on the first theory discussed above because these allegations are conclusory and therefore insufficient to survive a motion to dismiss. Again, the Court agrees. As previously discussed, the complaint fails to discuss Defendant Metro's training program and its inadequacies let alone explain how these inadequacies are a result of Defendant Metro's deliberate indifference to the constitutional rights of citizens. Plaintiffs' claims, therefore, do not plausibly allege a municipal liability claim based on Fourth Amendment violations. As it relates to Count II, the Court, therefore, finds that Plaintiffs cannot move forward in their case against Defendant Metro based on a failure to train theory.

The parties do not directly address the second theory discussed above.[14] The Court notes that Count II, to the extent it is based on the second theory, appears to be susceptible to dismissal

---

[14] Defendant Metro moves to dismiss "all claims against it because the Complaint fails to adequately plead that any constitutional custom, policy, or practice was the moving force behind any violation of [Plaintiffs'] rights." (Doc. No. 9 at 4.) The Court, however, finds that this statement without more is insufficient to extend the motion to dismiss Count II to cover the theory related to the most-wanted list. The Sixth Circuit has held that "'[i]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way,

because, *inter alia*, Plaintiffs have not adequately alleged Defendant Metro's municipal liability under Section 1983. Rather, Plaintiffs appear to allege that Defendant Metro is liable based on a theory of *respondeat superior*. It is axiomatic that municipalities cannot be held liable under Section 1983 on a *respondeat superior* theory. *See Monnell*, 436 U.S. at 691. Defendant Metro has not specifically supported its motion to dismiss Count II with respect to the second theory, and in that sense has not moved to dismiss Count II in its entirety. Therefore, in this sense, if the Court were to dismiss Count II in its entirety, it would be doing so *sua sponte*. The Court declines to do so here for now, because any such dismissal *sua sponte* would occur without the proper notice to Plaintiff. *See Rondigo*, 522 F. App'x at 286 ("A district court can, however, *sua sponte* dismiss claims where it gives notice of its intent to do so, the plaintiffs have an opportunity to show why dismissal is not warranted, and the district court spells out its reasons for dismissing the case."). However, the Court now gives Plaintiffs notice that it will dismiss Count II with prejudice as it relates to Defendant Metro unless Plaintiffs explain to the Court, within ten days from the entry of the accompanying Order, why dismissal is not warranted.

## C. Count III

Count III alleges that Defendant Metro is liable for the violation of Plaintiffs' due process rights based on a failure to train theory. (Compl. ¶ 74.) Specifically, Plaintiffs allege the following:

> The fact that none of the OFFICERS nor their supervisors objected to the false arrest based on the deprivation of the due process rights of both Plaintiffs . . . is *prima facie* evidence that this was not simply a case of an officer failing to use good judgment, but rather several

---

leaving the court to . . . put flesh on its bones.'" *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010) (quoting *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (alteration in original); *see also Lewless v. Sec'y of Health & Human Servs.*, 25 F.3d 1049 (6th Cir. 1994) (holding that it "is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel" (quoting *Sanchez v. Miller*, 792 F.2d 694, 703 (7th Cir. 1986))).

> officers who were not properly trained as to the requirements of their duties and the fair treatment of minorities.
>
> The fact that the OFFICERS and the City seem quite unconcerned with the consequences of denying these men their freedom is *prima facie* evidence that this was not simply a case of an officer failing to use good judgment, but rather several officers who were not properly trained as to the requirements of their duties.

(*Id.* ¶ 72-73.)[15] Defendant Metro argues that Count III should be dismissed because these allegations are conclusory and therefore insufficient to survive a motion to dismiss. The Court, again, agrees. As previously discussed, Plaintiffs fail to describe police officer training, any specific shortcomings in the training, or explain how such unidentified shortcomings are the moving force behind the constitutional violation. Plaintiffs also make no non-conclusory allegations regarding deliberate indifference, especially allegations sufficient to show deliberate indifference based on a single incident. Accordingly, the Court will grant Defendant Metro's motion to dismiss as to Count III and dismiss Count III against Metro with prejudice.

In sum, the Court will dismiss Count I and Count III as to Defendant Metro with prejudice. The Court also gives notice to Plaintiffs that it will dismiss Count II with prejudice as to Defendant Metro unless Plaintiffs explain why dismissal is not warranted within ten days from the entry of the accompanying Order.[16]

---

[15] Defendant Metro states that Paragraph 73 in the complaint appears to plead a "failure to investigate [Plaintiff's complaints to MNPD about their treatment]" municipal liability claim. The Court, however, interprets this paragraph—which is not written with ideal clarity—as attempting to allege deliberate indifference. However, regardless of how the Court interprets this paragraph, Count III will be dismissed with prejudice for the reasons discussed herein.

[16] Plaintiffs' argument against dismissing the complaint against Metro is unpersuasive. Plaintiffs discuss issues of systemic inequality and racial bias in the criminal justice system. The Court's ruling does not address those issues because, *inter alia*, they are not relevant to the Court's analysis in deciding the instant motion to dismiss. Rather, this ruling addresses the relevant question here— whether Plaintiffs' complaint plausibly states a claim pursuant to the familiar standards the

## IV.  Claims against Defendant Tina Lowe

Under Rule 4(m), if a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. There is no evidence in the record that Defendant Lowe was timely served.

Under Rule 41(b), "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b). Rule 41(b) does not abrogate the power of courts, "acting on their own initiative, to clear their calendars of cases that have remained dormant because of the inaction or dilatoriness of the parties seeking relief." *Link v. Wabash R.R. Co.*, 370 U.S. 626, 630 (1962); *see also Carter v. City of Memphis*, 636 F.2d 159, 161 (6th Cir. 1980) ("[i]t is clear that the district court does have the power under Rule 41(b) . . . to enter a *sua sponte* order of dismissal") (citing *Link*, 370 U.S. 626). Consistent with *Link*, Local Rule 41.01(a) authorizes the Court to summarily dismiss a civil suit that has "been pending for an unreasonable period of time without any action having been taken by any party . . . ." M.D. Tenn. R. 41.01(a) (dismissal for unreasonable delay).

Accordingly, the Court will order Plaintiffs to show cause within ten days from the entry of the accompanying Order why this lawsuit should not be dismissed against Defendant Lowe for failure to comply with Rule 4(m) or alternatively failure to prosecute under Rule 41(b). Plaintiffs are warned that their failure to respond to the accompanying Order will likely result in a dismissal of the case against Defendant Lowe.

---

Supreme Court set forth in *Twombly* and *Iqbal*. As discussed in detail herein, the Court finds that it does not.

## V.    Claims against Unidentified Police Officers

As discussed above, Plaintiffs allege claims against unidentified police officers. Although the naming of pseudonymous defendants is permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identities and effect service on the named parties within the 90-day period set forth in Rule 4(m). *Brown v. Warden Ross Corr. Inst.*, No. 2:10-CV-822, 2011 WL 1877706, at *2 (S.D. Ohio May 16, 2011).

Plaintiffs state that the unidentified police officers have now been identified from a police report and list the officers' names. However, Plaintiffs also state that the original complaint has not been amended to add the new officers, and therefore there is no record that any of these officers have been served. Plaintiffs filed their complaint in March 2018 and the current motion has been pending since May 2018. Plaintiffs have not filed a motion for leave to amend the complaint. Given this delay, the Court will order Plaintiffs to show cause within ten days from the entry of the accompanying Order why this case should not be dismissed against the unidentified officers.

## CONCLUSION

For the foregoing reasons, Defendant Rothwell's Motion to Dismiss (Doc. No. 7) will be **GRANTED**, and all claims alleged against her in this action will be **DISMISSED WITH PREJUDICE**. As to Defendant Metro, its Motion to Dismiss (Doc. No. 9) will be **GRANTED IN PART**, in that  Count I and Count III will be **DISMISSED WITH PREJUDICE**.

The following claims remain:

- As to Defendant Metro, Count II. The Court gives notice to Plaintiffs that it will dismiss Count II with prejudice as to Defendant Metro unless Plaintiffs explain why

dismissal is not warranted within ten days from the entry of the accompanying Order.

- As to Defendant Lowe, Counts I, II, and III. The Court will order Plaintiffs to show cause within ten days from the entry of the accompanying Order why this case should not be dismissed against Defendant Lowe.

- As to the unidentified police officers, Counts I, II, and III. The Court will order Plaintiffs to show cause within ten days from the entry of the accompanying Order why this case should not be dismissed against the formerly unidentified officers, who now have (according to Plaintiffs) been identified.

An appropriate order will be entered.


_Eli Richardson_

ELI RICHARDSON
UNITED STATES DISTRICT JUDGE